REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

**MCGUIREWOODS LLP**
DAVID S. REIDY (SBN 225904)
JAMIE D. WELLS (SBN 290827)
Two Embarcadero Center
Suite 1300
San Francisco, CA  94111-3821
Telephone:  415.844.9944
Facsimile:  415.844.9922
Email:  dreidy@mcguirewoods.com
Email:  jwells@mcguirewoods.com

Attorneys for TIBCO Software Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIBCO SOFTWARE INC. | CASE NO. 5:17-CV-03313-EJD |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR:** |
| vs. | |
| GAIN CAPITAL GROUP, LLC; and Does 1 to 10 inclusive, | 1. **BREACH OF CONTRACT (OVER-DEPLOYMENT)** |
| Defendants. | 2. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** |
| | 3. **BREACH OF CONTRACT (2016 ORDER FORM)** |
| | 4. **COPYRIGHT INFRINGEMENT** |

PLAINTIFF'S FIRST AMENDED COMPLAINT

1    Plaintiff TIBCO Software Inc. ("TIBCO"), by and through its attorneys, brings this First

2    Amended Complaint against Defendant GAIN Capital Group, LLC ("GAIN") and Does 1-10

3    (collectively "Defendants") and hereby alleges as follows:

4                                    **NATURE OF THE CASE**

5    1.    TIBCO brings this action seeking damages against GAIN for GAIN's breach of

6    various agreements between the parties and GAIN's continued deployment and use of TIBCO

7    software without a valid license.

8                                          **PARTIES**

9    2.    TIBCO is and at all times relevant hereto was a corporation, incorporated in

10   Delaware and headquartered in California. TIBCO is the leading independent provider of software

11   creating integration analytics and events processing software for companies around the world.

12   TIBCO is headquartered in Palo Alto, California.

13   3.    TIBCO is informed and believes, and based thereon alleges, that GAIN is and at all

14   times relevant hereto was a limited liability company registered and headquartered in New Jersey,

15   with no members residing in California. Upon information and belief, at all times relevant hereto,

16   GAIN provided retail and institutional investors with access to foreign exchange markets.

17   4.    TIBCO is without sufficient information to specifically identify those persons

18   named fictitiously herein as Does 1-10. TIBCO reserves the right to amend this First Amended

19   Complaint to specifically identify those parties once their identities become known.

20                              **JURISDICTION AND VENUE**

21   5.    This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 and 28

22   U.S.C. § 1338 as it involves questions and issues under the United States Copyright Act.  This

23   Court also has jurisdiction to hear this case pursuant to 28 U.S.C. § 1332 as the matter in

24   controversy exceeds the sum of $75,000 and is between citizens of different states.

25   6.    This Court has personal jurisdiction over GAIN arising from its contacts with

26   California, by which GAIN intentionally availed itself to the protections afforded under California

27   law, including but not limited to its entering into the contracts at issue here, with a California

28   resident, executed in California, all of which were subject to California law, and to be performed,

1  at least in part in California, as alleged below.

2        7.    Venue is proper pursuant to 28 U.S.C. §1391(a) because TIBCO resides here,

3  because GAIN receives a substantial amount of services and software from TIBCO in this District,

4  because a substantial part of the events or omissions giving rise to the claims occurred in this

5  District, and because TIBCO was harmed in this District.

6  <u>**ALLEGATIONS**</u>

7        8.    All TIBCO software requires a license agreement with TIBCO's terms and

8  conditions prior to download and deployment.

9        9.    Where TIBCO software, or any TIBCO product, is present in a customer's

10  environment, it represents TIBCO's protected intellectual property and requires a valid license

11  covering that presence.

12       10.    TIBCO's software license quantities are strictly limited to the specific grant

13  contained in a given license, and any units or versions of TIBCO software deployed in excess of

14  such a specific grant, regardless of length or duration of use, constitute protected intellectual

15  property requiring a new or separate license.

16  <u>**2008 License:**</u>

17       11.    In November 2008, TIBCO and GAIN (collectively known as the "Parties")

18  entered into an agreement by which GAIN licensed "TIBCO Enterprise Message Service" and

19  "TIBCO Hawk" software from TIBCO. The license consisted of a Software License and Services

20  Order Form and TIBCO's Software License Terms and Conditions ("2008 Terms and

21  Conditions"), collectively attached hereto as **Exhibit A** and incorporated herein by reference.

22       12.    The 2008 license permitted GAIN to deploy and use a specified Number of Units

23  of the software at GAIN's premises for specified purposes, and precluded GAIN from copying the

24  software or allowing unauthorized users access to [the deployed units of [TIBCO's software, among

25  other restrictions].

26       13.    GAIN's license created a one-year "Enterprise Term" expiring November 25, 2009,

27  at which time the number of units of software covered by the license was fixed.

28

1  ████████████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████

6  Exhibit A, at 2 (add'l emph. added).

7       14.    TIBCO is informed and believes, and based thereon alleges, ████████████

8  ████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████

12 ████████████████████████ *Id*. at 1.

13      15.    GAIN did not have a license to deploy any additional units of ████████████

14 ████████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████████

16 ███████████████████████████████

17 **2010 License:**

18      16.    In December 2010, the Parties entered into a new license agreement for TIBCO

19 software, by executing a new Order Form that again permitted GAIN to ████████████████

20 ███████████████████████████████████████████ true and correct

21 copy of the 2010 Order Form, which incorporated by reference the 2008 Terms and Conditions, is

22 attached hereto as **Exhibit B** and incorporated herein by reference.

23      17.    ████████████████████████████████████████████

24 ████████████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████████

26 ████████████████████████

27      18.    On or around December 30, 2012, GAIN provided TIBCO with its End of Term

28 Deployment Report, ██████████████████████████████████████████████

1  and TIBCO Hawk software that GAIN had deployed during the 2010-2012 Enterprise period and

2  covered by the 2010 license.

3      19.    TIBCO is informed and believes, and based thereon alleges, that as of the end of

4  the 2010-2012 Enterprise period, 21 units of TIBCO Enterprise Message Service and 9 units of

5  TIBCO Hawk software had been deployed by GAIN, and those amounts thus became the

6  maximum Number of Units by license type that GAIN was permitted to deploy pursuant to the

7  2010 license agreement.

8      20.    GAIN did not have a license to deploy any additional units of TIBCO Enterprise

9  Message Service or TIBCO Hawk software after December 30, 2012, as any units so deployed

10  could exceed the maximum Number of Units specified in the 2010 license and fixed as of the end

11  of the Enterprise period. Any units of covered software deployed during the Enterprise period

12  could be used by GAIN in perpetuity, provided the use was consistent with the scope of the

13  license and TIBCO's 2008 Terms and Conditions.

14  **Amended Terms and Conditions:**

15      21.    On November 15, 2012, the Parties signed an Amended Software License Terms

16  and Conditions, which amended the maintenance fees. A true and correct copy of the Amendment

17  is attached hereto and incorporated herein as **Exhibit C.**

18  **GAIN's Unlawful Use of TIBCO Software:**

19      22.    Upon information and belief, GAIN unlawfully deployed units of TIBCO

20  Enterprise Message Service and TIBCO Hawk software without permission and without holding a

21  valid license to do so. Specifically, TIBCO is informed and believes, and based thereon alleges,

22  that GAIN maintained TIBCO software in its environment after expiration of the Enterprise

23  periods set forth in the 2008 and 2010 licenses, and deployed additional units of that software after

24  December 30, 2012. GAIN's unlawful deployment of additional units constituted a use of

25  TIBCO's software without a license, and violated a condition of the agreements by which GAIN

26  obtained access to TIBCO's software in 2008 and 2010.

27      23.    GAIN was required to hold a valid license to deploy any TIBCO software, but the

28  licenses it held only covered units of TIBCO Enterprise Message Service and TIBCO Hawk

1  <span style="background:black">software deployed prior to December 30, 2012.</span> Thus, GAIN's use of TIBCO products not covered

2  by the 2008 or 2010 licenses, or other valid license, and GAIN's deployment of additional units <span style="background:black">of</span>

3  <span style="background:black">TIBCO Enterprise Message Service and TIBCO Hawk software after December 30, 2012</span>

4  constituted in each instance an unauthorized use of TIBCO's protected intellectual property.

5  **2016 Audit:**

6       24.    In or around May 2016, TIBCO retained KPMG, LLP ("KPMG"), as an

7  independent auditor to conduct an on-site audit of GAIN's deployment and use of TIBCO

8  software.

9       25.    On May 18, 2016, TIBCO notified GAIN of its intent to audit GAIN's compliance

10 and initiated the audit procedure.

11      26.    Between May and August 2016, GAIN delayed the audit by refusing to comply

12 with audit procedures, including failing to provide a list of available dates for the audit and failing

13 to produce documentation evidencing the TIBCO software GAIN deployed. In so doing, GAIN

14 frustrated the purpose of the 2008 and 2010 license agreements, acted in bad faith, and sought to

15 conceal its unlawful conduct from TIBCO.

16      27.    TIBCO finally obtained access to GAIN's premises and, from August 23- 24, 2016,

17 KPMG was permitted to conduct its on-site audit of GAIN on TIBCO's behalf.

18      28.    The Audit revealed that GAIN had continued to deploy additional units of <span style="background:black">TIBCO</span>

19 <span style="background:black">Enterprise Message Service and TIBCO Hawk software after expiration of the 2010-2012</span>

20 <span style="background:black">Enterprise period, thereby exceeding the maximum number of units permitted under either the</span>

21 <span style="background:black">2008 or 2010 licenses and deploying units of TIBCO software without a license after December</span>

22 <span style="background:black">30, 2012.</span> KPMG also found GAIN deployed <span style="background:black">TIBCO ActiveSpaces Enterprise Edition software</span>

23 without any license at all.

24      29.    Specifically, KPMG found that GAIN had over-deployed <span style="background:black">two-hundred and nine</span>

25 <span style="background:black">(209) units of TIBCO Enterprise Message Service and eighty-one (81) units of TIBCO Hawk</span>

26 <span style="background:black">software after December 30, 2012, and hence in excess of the maximum Number of Units</span>

27 <span style="background:black">permitted and therefore</span> without a valid license. KPMG also discovered that GAIN over-deployed

28 <span style="background:black">nine (9) units of TIBCO ActiveSpaces Enterprise Edition software</span> without a valid license.

**2016 Bill of Materials:**

30.     On October 20, 2016, TIBCO sent GAIN written correspondence setting forth the numerous TIBCO software products, and the units of those products, which KPMG had found GAIN deployed and/or obtained and used without a valid license.

31.     On October 20, 2016, TIBCO provided GAIN with a "Bill of Materials" setting forth the minimum amount GAIN should pay TIBCO for its unauthorized use of TIBCO's software, a true and correct copy of the October 20, 2016 correspondence and Bill of Materials are attached hereto as **Exhibit D** and incorporated herein by reference.

32.     As specified in the Bill of Materials, TIBCO demanded the list price for each product, or unit of a product, used by GAIN without a license, along with support and maintenance fees, totaling $19,275,829.

33.     The Bill of Materials also charged GAIN for one additional year of forward support, which would have been required to cover the year of support GAIN would have had in place at the time it began unlawfully deploying units of TIBCO software without a license.

34.     The amount owed by GAIN, as set forth in the Bill of Materials, totals $22,064,629.

35.     To date, GAIN has not made any payment of the amounts set forth in the Bill of Materials.

**2016 License:**

36.     On or about November 15, 2016, the Parties entered into a new license agreement covering nine (9) units of TIBCO ActiveSpaces Enterprise Edition, fifty-nine (59) units of TIBCO Enterprise Message Service, and eighty-one (81) units of TIBCO Hawk software ("2016 license" or "2016 Order Form").   A true and correct copy of the 2016 Order Form is attached hereto and incorporated herein as **Exhibit E**. The 2008 Terms and Conditions, as amended, were expressly incorporated into the 2016 Order Form.

37.     The term of the license started on November 15, 2016 and provided a perpetual license subject to the 2008 Terms and Conditions, as amended, and covenants of the 2016 license.

38.   The 2016 license also includes maintenance fees for units deployed pursuant to the 2008 and 2010 license agreements (referred to as contract numbers T-SLSA-1505 and C-Add-4087), which had been "dropped" and was reinstated under the 2016 license. The total maintenance fees for software licensed in 2016, and for software covered by the 2008 and 2010 agreements, totals $1,123,800.

**GAIN's Failure to Pay for the 2016 License:**

39.   Pursuant to the 2016 license, TIBCO issued two invoices to GAIN that totaled $5,243,800. On November 26, 2016, TIBCO issued invoice number 4106389 ("Invoice 1") in the amount of $5,108,800. On November 30, 2016, TIBCO issued invoice number 4106690 ("Invoice 2") to GAIN in the amount of $135,000. True and correct copies of Invoice 1 and Invoice 2 are attached hereto as **Exhibit F** and **Exhibit G** and incorporated herein by reference.

40.   Pursuant to Paragraph 5.1 of the 2008 Terms and Conditions, GAIN was obligated to pay TIBCO its outstanding balance within 30 days from issuance of Invoices 1 and 2.

41.   GAIN failed to pay the amounts owed to TIBCO.

42.   On February 6, 2017, TIBCO sent GAIN a demand letter for the amounts due under the 2016 license. A true and correct copy of the February 6, 2017 demand letter is attached hereto as **Exhibit H** and incorporated herein by reference.

43.   On February 27, 2017, TIBCO sent GAIN a further demand letter for the amounts due under the 2016 license. A true and correct copy of the February 27, 2017 demand letter is attached hereto as **Exhibit I** and incorporated herein by reference.

44.   To date, GAIN has failed to pay any of the amounts due.

**FIRST CLAIM FOR RELIEF**

**BREACH OF CONTRACT (OVER-DEPLOYMENT)**

**(As to all Defendants)**

45.   TIBCO refers to and incorporates herein by reference Paragraphs 1 through 44.

46.   As recited above, beginning in November 2008, GAIN purchased various software from TIBCO through a series of order forms and agreements, specifying the particular software purchased, the number of units purchased and the duration of authorized deployment and use.

1      47.    ████████████████████████████████████████████████

2      ████████████████████████████████████

3      48.    In August 2016, KPMG conducted an on-site audit of GAIN.  As a result of the

4      audit, KPMG confirmed that GAIN had over-deployed TIBCO software by ████████████

5      ████████████████████████████████████████████████████████████

6      ████████████████████████████████████████████████████████████

7      ████████████████████████████████████

8      49.    GAIN's ████████████████████████████████ caused damage

9      to TIBCO in an amount to be proven at trial, but not less than ████████████

10                         **SECOND CLAIM FOR RELIEF**

11                      **BREACH OF THE IMPLIED COVENANT**

12                       **OF GOOD FAITH AND FAIR DEALING**

13                             **(As to all Defendants)**

14      50.    TIBCO refers to and incorporates herein by reference Paragraphs 1 through 44.

15      51.    Under California law, there is an implied covenant that neither party will take any

16      action that would deliberately deprive the other of the benefits of the agreement, and a duty to

17      exercise its discretion under a contract in good faith and in accordance with fair dealing.

18      52.    As recited above, beginning in November 2008, GAIN licensed designated types of

19      ████████████████████████████████████ from TIBCO through a series of

20      order forms and agreements, specifying the particular software obtained, the number of units

21      permitted, and the duration of authorized deployment and use.

22      53.    Between May and August 2016, GAIN delayed and frustrated ████████████

23      ████████████ an audit of GAIN's use of TIBCO software, ████████████████████

24      ████████████████ by engaging in bad faith conduct including but not limited to refusing to

25      comply with TIBCO and KPMG's audit procedures, failing to provide a list of available dates for

26      the audit, failing to produce documentation evidencing the TIBCO software GAIN had deployed,

27      and creating delays that stymied TIBCO's ability to discover GAIN's unlawful conduct and obtain

28      relief and compensation. In so doing, GAIN frustrated the purpose of the 2008 and 2010 license

1  agreements, acted in bad faith, and sought to conceal its unlawful conduct from TIBCO.   In

2  addition, as KPMG confirmed, GAIN obtained access to TIBCO's software with the intention, on

3  information and belief, of over-deploying and misusing the TIBCO software.

4        54.      GAIN's conduct has deliberately deprived TIBCO of the rights and benefits of the

5  Parties' agreements and constituted failure by GAIN to act in good faith and in accordance with

6  fair dealing.

7        55.      GAIN's conduct caused damage to TIBCO in an amount to be proven at trial.

8  **THIRD CLAIM FOR RELIEF**

9  **BREACH OF CONTRACT (2016 ORDER FORM)**

10  **(As to all Defendants)**

11        56.      TIBCO refers to and incorporates herein by reference Paragraphs 1 through 44.

12        57.      In November 2016, the Parties entered into the November 2016 Order Form,

13  ▓adopting and pursuant to the 2008 Terms and Conditions, whereby GAIN agreed to pay TIBCO▓

14  ▓$5,243,800 for specified software and services as described therein▓ *See* Exhibit E.

15        58.      ▓Pursuant to the November 2016 Order Form, TIBCO licensed nine (9) units of▓

16  ▓TIBCO ActiveSpaces Enterprise Edition, fifty-nine (59) units of TIBCO Enterprise Message▓

17  ▓Service and eighty-one (81) units of TIBCO Hawk to GAIN▓

18        59.      ▓In exchange, GAIN agreed to pay TIBCO $5,243,800▓

19        60.      On November 22, 2016, TIBCO issued Invoice 1 in the amount of ▓$5,108,800▓ and

20  on November 30, 2016, TIBCO issued Invoice 2 in the amount of ▓$135,000▓ to GAIN as payment

21  for the software and services agreed to under the November 2016 Order Form.

22        61.      ▓Pursuant to Paragraph 5.1 of the 2008 Terms and Conditions, GAIN was obligated▓

23  ▓to pay TIBCO within 30 days of the issued invoices▓

24        62.      To date, GAIN has not paid TIBCO the ▓$5,243,800▓ owed despite repeated demands

25  from TIBCO, in breach of the Parties' agreement to do so, causing TIBCO damage thereby.

26  //

27  //

28  //

**<u>FOURTH CLAIM FOR RELIEF</u>**

**COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 101 et. seq.**

**(As to all Defendants)**

63.     TIBCO refers to and incorporates herein by reference Paragraphs 1 through 44.

64.     ████████████████████████████████████████████████████ ████████ ("the Copyrighted Works") have all been duly registered with the United States Copyright Office.

65.     At least one version of each of ████████████████████████ ██████████████████████████ was registered with the United States Copyright Office at least two years before the 2016 audit.

66.     ██████████████████████████████████████████ TIBCO had a copyright ownership of the TIBCO software and any copies GAIN made of the TIBCO software.

67.     GAIN had access to each of the Copyrighted Works due to its business relationship with TIBCO.

68.     In November 2008, GAIN licensed a fixed number of units of ████████████ ████████████████████████████████████████████████████████████ ██████████████████████████

69.     TIBCO is informed and believes, and based thereon alleges, that ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████ Exhibit A, at 1.

70.     GAIN did not have a license to deploy any additional units of ████████████ ████████████████████████████████████████████

71.     In December 2010, GAIN licensed a fixed number of units of ████████████ ████████████████████████████████████████████████████████████ ████████████████████████

72.   GAIN's Enterprise period, during which period it could deploy units of the licensed TIBCO Enterprise Message Service and TIBCO Hawk software, expired on December 30, 2012.

73.   TIBCO is informed and believes, and based thereon alleges, that as of the end of the 2010-2012 Enterprise period, 21 units of TIBCO Enterprise Message Service and 9 units of TIBCO Hawk software had been deployed by GAIN, and those amounts thus became the maximum Number of Units by license type that GAIN was permitted to deploy pursuant to the 2010 license agreement.

74.   GAIN did not have a license to deploy any additional units of TIBCO Enterprise Message Service and TIBCO Hawk software beyond the number specified on December 30, 2012.

75.   Other than the specific number of deployments authorized by license, as set forth in the 2008 and 2010 licenses, and prior to the specific grant of a license to use a fixed number of units pursuant to the 2010 license, GAIN had no license and was not authorized to deploy additional units of the Copyrighted Works, nor did the licenses give GAIN any right to make any copies of the Copyrighted Works, use or deploy those works in unauthorized ways, put copies of those works on any computers or servers not authorized by a valid license, create derivatives of those works, or otherwise distribute those works.

76.   TIBCO is informed and believes, and based thereon alleges, that GAIN deployed two-hundred and nine (209) units of TIBCO Enterprise Message Service and eighty-one (81) units of TIBCO Hawk software unlawfully and without permission. These units were not covered by the 2008 or 2010 licenses, or by any other valid license.

77.   TIBCO is informed and believes, and based thereon alleges, that GAIN also deployed nine (9) units of TIBCO ActiveSpaces, Enterprise Edition software unlawfully and without permission. These units were not covered by the 2008 or 2010 licenses, or by any other valid license.

78.   Through its deployment and unlawful use of the Copyrighted Works, without permission or any valid license, GAIN did, without authorization, make copies of the Copyrighted Works, use and deploy those works, put copies of those works on computers or servers not

1  authorized by license, create derivatives of those works, and/or otherwise distribute those works in

2  violation of TIBCO's rights conferred.

3      79.     TIBCO is informed and believes, and based thereon alleges, that GAIN's

4  infringement of the Copyrighted Works was willful.

5      80.     TIBCO has been actually harmed by GAIN's infringement, including without

6  limitation through the lack of receipt of license fees, support fees, and other fees it typically

7  charges for deployment of software, in amounts to be proven at trial.

8      81.     Upon information and belief, GAIN has obtained profits attributable to its

9  infringement of the Copyrighted Works in amounts to be proven at trial.

10     82.     Absent an injunction, TIBCO will continue to be harmed by GAIN's infringement,

11 and the monetary damages available are insufficient to fully rectify the harm at issue.

12                          **PRAYER FOR RELIEF**

13 WHEREFORE, TIBCO prays for judgment as to each of its four claims for relief against GAIN

14 as follows:

15     1.     For damages according to proof;

16     2.     For all damages available under the Copyright Act, including, at TIBCO's

17 election, either actual damages and disgorgement of profits, or the maximum statutory damages

18 allowed;

19     3.     For a permanent injunction, stopping GAIN and its employees, officers, parents,

20 subsidiaries, and agents from using the Copyrighted Works;

21     4.     For pre-judgment and post-judgment interest at the legal rate;

22     5.     For reasonable attorney's fees, and other costs of suit herein incurred; and

23     6.     For such other and further relief as the Court may deem just and proper.

24

25

26 //

27 //

28 //

DATED: January 8, 2018                    MCGUIREWOODS LLP


                                    By:   */s/ Jamie D. Wells*
                                          Jamie D. Wells
                                          Attorneys for Plaintiff
                                          TIBCO Software Inc.

**REDACTED VERSION OF DOCUMENT(S) SOUGHT
TO BE SEALED**

# EXHIBIT A
# Exhibit Redacted In Full

**REDACTED VERSION OF DOCUMENT(S) SOUGHT
TO BE SEALED**

# EXHIBIT B
# Exhibit Redacted In Full

**REDACTED VERSION OF DOCUMENT(S) SOUGHT
TO BE SEALED**

# EXHIBIT C
# Exhibit Redacted In Full

**REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED**

# EXHIBIT D
# Exhibit Redacted In Full

**REDACTED VERSION OF DOCUMENT(S) SOUGHT
TO BE SEALED**

# EXHIBIT E
# Exhibit Redacted In Full

**REDACTED VERSION OF DOCUMENT(S) SOUGHT
TO BE SEALED**

# EXHIBIT F
# Exhibit Redacted In Full

**REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED**

# EXHIBIT G
# Exhibit Redacted In Full

**REDACTED VERSION OF DOCUMENT(S) SOUGHT
TO BE SEALED**

# EXHIBIT H
# Exhibit Redacted In Full

**REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED**

# EXHIBIT I
# Exhibit Redacted In Full